IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


JUSTIN BROWN,                              07-CR-190-BR

       Plaintiff,                       OPINION AND ORDER

v.

MYDATT SERVICES INC., d.b.a.
VALOR SECURITY SERVICES;
CLACKAMAS MALL LLC; and CHRIS
CECILIANI,

       Defendants.


**KERRY M.L. SMITH**
Smith & Fjelstad
722 N. Main Avenue
Gresham, OR 97030
(503) 669-2242

       Attorneys for Plaintiff

**ALLYSON S. KRUEGER**
**DANNY L. HITT**
Hitt, Hiller, Monfils & Williams, LLP
411 S.W. Second Avenue, Suite 400
Portland, OR 97204
(503) 595-5382

       Attorneys for Defendants


1 - OPINION AND ORDER

**BROWN, Judge.**

This matter comes before the Court on Defendants' Motion for Summary Judgment (#31).  For the reasons that follow, the Court **GRANTS** Defendants' Motion.


## BACKGROUND

The following facts are undisputed except as otherwise noted.

On January 7, 2006, Plaintiff Justin Brown, a 19 year-old African-American male, arranged to meet some friends at the Clackamas Town Center Mall.  With the exception of Tony Snedeker (described as being of Caucasian and Hawaiian descent), the group of approximately six males were African-American and were aged from 17-20.

Plaintiff went to the mall with the stated intent to eat at the food court and to look for shoes or clothing on discount at the Van's store.  Plaintiff, however, did not enter any stores and did not make any purchases.  As the group approached the escalator to the second floor where the food court was located, Snedeker spoke momentarily with a family member.  After the exchange, the group started up the escalator.

Defendant Chris Ceciliani, a security officer employed by Defendant Mydatt Services, Inc., in the "district" of the mall

2 - OPINION AND ORDER

where Plaintiff's group was located, monitored the group as they approached the escalator.  As the group ascended the escalator, a group of Latino males were on the descending escalator on the other side.  At least one of the members of Plaintiff's group raised his hand and made a signal.  Plaintiff alleges Snedeker made a sign of peace with his hand in the direction of his family member.  Ceciliani attested he believed Snedeker made a gang sign directed at the group of Latino males on the descending escalator.

Ceciliani approached Plaintiff's group and told them they were loitering in violation of mall policy and that the group had ten minutes to begin shopping or they would have to leave.

After talking with Plaintiff's group, Ceciliani began to walk away.  He testified he received a call from mall security (the exact time of the call is unclear) about a brewing conflict in the food court and began to make his way there to assist.  Ceciliani attested Plaintiff's group was verbally abusive to him as he walked away.  In his deposition, Plaintiff disputes Ceciliani's view of the events.  Plaintiff testified he approached Ceciliani as he left to ask whether his group could be justifiably kicked out of the mall for not shopping quickly enough.  Without any further explanation, Ceciliani told the group to leave the premises for the night.  Ceciliani and two Loss Prevention Officers from Sears escorted the group out the

3 - OPINION AND ORDER

door.  The mall was to be open for another three hours that night, and the group understood they could return the next day if they wished.  At that point, Ceciliani responded to the then-escalating fight in the food court.

On February 8, 2007, Plaintiff, an Oregon resident, filed his Complaint in this Court against Defendants Mydatt Services, a Delaware corporation registered and doing business in Oregon as Valor Security Services, Clackamas Mall L.L.C., and Ceciliani.  Plaintiff brings a single claim against Defendants under 42 U.S.C. § 1981 for violation of his civil right to make and to enforce a contract free of racial discrimination.

On January 7, 2008, Defendants filed their Motion for Summary Judgment.  On March 28, 2008, the Court heard oral argument and took Defendants' Motion under advisement.


## STANDARDS

**I.    Summary Judgment.**

Federal Rule of Civil Procedure 56(c) authorizes summary judgment if no genuine issue exists regarding any material fact and the moving party is entitled to judgment as a matter of law. The moving party must show the absence of an issue of material fact.  *Rivera v. Philip Morris, Inc.*, 395 F.3d 1142, 1146 (9th Cir. 2005).  In response to a properly supported motion for summary judgment, the nonmoving party must go beyond the

4 - OPINION AND ORDER

pleadings and show there is a genuine issue of material fact for trial. *Id*.

An issue of fact is genuine "'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002)(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The court must draw all reasonable inferences in favor of the nonmoving party. *Id*. "Summary judgment cannot be granted where contrary inferences may be drawn from the evidence as to material issues." *Easter v. Am. W. Fin.*, 381 F.3d 948, 957 (9th Cir. 2004)(citing *Sherman Oaks Med. Arts Ctr., Ltd. v. Carpenters Local Union No. 1936,* 680 F.2d 594, 598 (9th Cir. 1982)).

A mere disagreement about a material issue of fact, however, does not preclude summary judgment. *Jackson v. Bank of Haw.*, 902 F.2d 1385, 1389 (9th Cir. 1990). When the nonmoving party's claims are factually implausible, that party must "come forward with more persuasive evidence than otherwise would be necessary." *Wong v. Regents of Univ. of Cal.*, 379 F.3d 1097 (9th Cir. 2004), *as amended by* 410 F.3d 1052, 1055 (9th Cir. 2005)(citing *Blue Ridge Ins. Co. v. Stanewich*, 142 F.3d 1145, 1149 (9th Cir. 1998)).

The substantive law governing a claim or a defense determines whether a fact is material. *Miller v. Glenn Miller*

5 - OPINION AND ORDER

*Prod., Inc.*, 454 F.3d 975, 987 (9th Cir. 2006).  If the resolution of a factual dispute would not affect the outcome of the claim, the court may grant summary judgment.  *Id*.

## II.  42 U.S.C. § 1981:  Nonemployment-Contract Discrimination.

In *Lindsey v. SLT Los Angeles, LLC*, 447 F.3d 1138 (9th Cir. 2006), a case of first impression, the Ninth Circuit recognized a § 1981 claim for discrimination in nonemployment contracts.  *Id*. at 1144.  The *Lindsey* court adopted the standards set out by the Sixth and Seventh Circuits for establishing a *prima facie* case of discrimination in nonemployment contracts.  *Lindsey*, 447 F.3d at 1145.  To establish a *prima facie* case, Plaintiff must show: "(1) [he] is a member of a protected class, (2) [he] attempted to contract for certain services, and (3) [he] was denied the right to contract for such services."  *Id*. at 1145 (citing *Christian v. Wal-Mart Stores, Inc*., 252 F.3d 862, 872 (6th Cir. 2001), and *Bratton v. Roadway Package Sys., Inc*., 77 F.3d 168, 176 (7th Cir. 1996)).[1]

Like the *Lindsey* court and the Sixth and Seventh Circuits, this Court applies the familiar burden-shifting framework announced by the Supreme Court in *McDonnell Douglas* to

------

[1] The Sixth and Seventh Circuits disagree as to the form of the fourth element required to establish a *prima facie* case of discrimination in nonemployment contracts, but resolution of that dispute is not necessary to decide this matter.  *See Lindsey*, 447 F.3d at 1145.

6 - OPINION AND ORDER

Plaintiff's claim of discrimination under § 1981. 411 U.S. 792, 802-04 (1977). *See also Lindsey*, 447 F.3d at 1144. Thus, the plaintiff has the initial burden to establish a *prima facie* case of discrimination in violation of his civil right to make and to enforce contracts. *Lindsey*, 447 F.3d at 1144. If the plaintiff establishes a *prima facie* case, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for terminating the plaintiff. *McDonnell Douglas,* 411 U.S. at 802-04. Finally, if the defendant carries its burden, the plaintiff must prove by a preponderance of the evidence that the defendant's reasons were merely a pretext for discrimination. *Id.*


## DISCUSSION

In their Motion for Summary Judgment, Defendants concede Plaintiff is a member of a protected class, which is the first element of Plaintiff's *prima facie* case for discrimination in nonemployment contracts under § 1981. Defendants, however, contend Plaintiff has not established the remaining elements. Specifically, Defendants contend Plaintiff was not engaged in protected activity because he did not "attempt to contract" for any goods or services at Clackamas Town Center Mall on January 7, 2006. In fact, Defendants emphasize Plaintiff did not at any relevant time even select a specific item for purchase.

7 - OPINION AND ORDER

Plaintiff counters he has provided sufficient evidence of his *intent* to purchase food and clothing at the mall. Plaintiff also contends denial of admittance to a retail establishment because of racial animus constitutes sufficient interference with contractual rights to state a claim under § 1981.

Accordingly, the issue before the Court is whether entering a retail shopping center with the intent of purchasing unspecified items is sufficient to establish the second element of Plaintiff's *prima facie* case that Plaintiff "attempted to contract" while at Clackamas Town Center. *See Lindsey*, 474 F.3d at 1145.

**I.    The Law.**

Section 1981 defines the right to "make and enforce contracts" as "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b). In *Lindsey*, the Ninth Circuit found the plaintiff established the second element of a *prima facie* case under § 1981 by providing numerous written documents exchanged by the plaintiff and the defendant that demonstrated the plaintiff's "attempts to contract" with the defendant hotel for a specific ballroom to host the plaintiff's planned event. 447 F.3d at 1146. Neither the *Lindsey* court nor any other Ninth Circuit court, however, has addressed the minimum

8 - OPINION AND ORDER

showing necessary for a plaintiff to show an "attempt to contract." Nevertheless, the decisions of other circuits provide consistent guidance. In *Garret v. Tandy Corp.*, the First Circuit held:

> [S]hopping in a retail store may involve multiple contracts. Each time a customer takes an item off the shelf, a new contract looms, and each time the item is returned, the potential contract is extinguished. The 1991 expansion of the definition of "make and enforce contracts" in section 1981, then, extends the reach of the statute to situations beyond the four corners of a particular contract; the extension applies to those situations in which a merchant, acting out of racial animus, impedes a customer's ability to enter into, or enjoy the benefits of, a contractual relationship.

295 F.3d 94, 100 (1st Cir. 2002)(citing *Christian v. Wal-Mart Stores, Inc.*, 252 F.3d 862, 872 (6th Cir. 2001)). The *Garrett* court noted Congress did not intend § 1981 as a general prohibition against racial discrimination. 295 F.3d at 100-01. "[I]n order to satisfy the foundational pleading requirements for a suit under section 1981, a retail customer must allege that he was actually denied the ability either to make, perform, enforce, modify, or terminate a contract, or to enjoy the fruits of a contractual relationship, by reason of a race-based animus." *Id*. The court held the plaintiff's contentions that he was watched by surveillance cameras on suspicion of shoplifting before his purchase and that he was accused of shoplifting after he bought his items were not sufficient to support his § 1981 claim. *Id*.

9 - OPINION AND ORDER

at 101-03.

The Fourth, Fifth, and Tenth Circuits have reached similar conclusions.  In *Hampton v. Dillard Department Stores, Inc.*, the Tenth Circuit held that a woman who had been allegedly ejected from a store on the basis of race could not pursue a § 1981 claim because she had not made or attempted to make a specific purchase.  247 F.3d 1091, 1117-18 (10th Cir. 2001), *cert. denied*, 534 U.S. 1131 (2002).  The Court concluded there "must have been interference with a contract beyond the mere expectation of being treated without discrimination while shopping."  *Id.* at 1118.  Even a customer with a coupon for a specific item who did not make an "attempt" to purchase the item and was allegedly ejected on racial grounds could not state a viable claim under § 1981.  *Id.*  "[A] 1981 claim for interference with the right to make and enforce a contract must involve the actual loss of a contract interest, not merely the possible loss of future contract opportunities."  *Id*. at 1104.  Thus, the *Hampton* court rejected the plaintiff's proposed expansion of § 1981 to apply to "harassment upon entering a retail establishment."  *Id.* at 1118.

The Fourth and Fifth Circuits also have relied on the "attempt to contract" language and require a plaintiff to show that he was actively in the course of purchasing goods in order to establish a *prima facie* case.  For example, the Fourth Circuit held a plaintiff established that he attempted to contract by

showing he tried to purchase a selected item with an out-of-state check and was denied the purchase. *Williams v. Staples, Inc.*, 372 F.3d 662, 667-68 (4th Cir. 2004). In *Morris v. Dillard Department Stores, Inc.*, the Fifth Circuit held the plaintiff must offer "evidence of some tangible attempt to contract . . . during the course of the ban which could give rise to a contractual duty between her and the merchant, and which was in some way thwarted." 277 F.3d 743, 752 (5th Cir. 2001).

## II. Analysis.

Plaintiff testified at deposition and in his Affidavit that he went to the mall with the intent to eat at the food court and to consider items discounted at the Van's store. It is undisputed, however, that Plaintiff did not make any purchases or enter into any express contracts before he was escorted out of Clackamas Town Center. Nonetheless, Plaintiff contends his intent to purchase is sufficient to establish the second element of a *prima facie* case under § 1981 even though he had not yet selected any items to purchase before he was removed from the premises.

Plaintiff relies in part on *Eddy v. Waffle House, Inc.*, in which the Fourth Circuit found the plaintiffs had made a *prima facie* case under § 1981 by showing a Waffle House employee made a racially derogatory remark that prompted the plaintiffs to leave the restaurant. 482 F.3d 674, 677-78 (4th Cir. 2007). The *Eddy*

11 - OPINION AND ORDER

court held dining in a restaurant generally involves a
contractual relationship that continues over the course of the
meal and found the defendant's racial hostility reasonably caused
the plaintiffs to leave the restaurant, which sufficiently
impaired the plaintiffs' contractual interests. *Id.* The *Eddy*
court, however, cited to *Arguello v. Conoco, Inc.*, 330 F.3d 355,
360-61 (5th Cir. 2003), to distinguish its holding from cases in
general retail settings. *Eddy*, 482 F.3d at 678. In *Arguello*,
the Fifth Circuit held:

> [D]iscriminatory service in restaurants and
> clubs . . . [is] easily distinguishable,
> because dining at a restaurant generally
> involves a contractual relationship that
> continues over the course of the meal and
> entitles the customer to benefits in addition
> to the meal purchased [such as for reasonable
> service]. Restaurants are, in that respect,
> significantly different from retail
> establishments.

330 F.3d at 360-61.

    Here Plaintiff's claim, which arises in the context of a
retail shopping mall, is distinguishable from claims arising in
the restaurant-service context because a contract is not created
between a patron and a retail establishment merely by virtue of
physically crossing the threshold onto the mall's property.
Although Plaintiff's counsel contended during oral argument that
Plaintff's presence in the mall was sufficient to create a
contractual relationship with the mall, counsel could not provide
any legal authority for this contention, and the Court has not

12 - OPINION AND ORDER

been able to find any.  As the Tenth Circuit held in *Hampton*, §
1981 does not support a claim for the "possible loss of future
contract opportunities," but "must involve the actual loss of a
contract interest."  247 F.3d at 1104.

Plaintiff also relies on *Christian v. Wal-Mart*, 252 F.3d 862
(6th Cir. 2001).  In *Christian*, the plaintiff had physically
selected merchandise, had demonstrated the means to make the
purchase of the merchandise, and had attested she would have made
the purchase but for her ejection.  *Id.* at 874.  The Sixth
Circuit held the plaintiff had satisfied the second element
required to establish a *prima facie* case.  *Id.*  Although in this
case Plaintiff has established his intent both to purchase
something to eat at the food court and to consider the sale items
at the Van's store, he has not established any "tangible attempt
to contract" with any retail establishment at the mall such as
physically selecting merchandise to buy.  *See Morris,* 277 F.3d at
752.  *See also Garrett*, 295 F.3d at 100; *Hampton*, 247 F.3d at
1118.

This Court finds the reasoning of the First, Fourth, Fifth,
Sixth, and Tenth Circuits to be persuasive.  On this record and
in light of the great weight of authority from these other
circuits, the Court concludes Plaintiff has failed to meet his
burden by failing to provide sufficient evidence of a "tangible
attempt to contract," and, therefore, Plaintiff has failed to

13 - OPINION AND ORDER

establish a *prima facie* case of discrimination under § 1981. Accordingly, the Court grants Defendants' Motion for Summary Judgment and finds it unnecessary to address the parties' remaining arguments.

## **CONCLUSION**

For these reasons, the Court **GRANTS** Defendants' Motion for Summary Judgment (#31) as to Plaintiff's § 1981 claim and **DISMISSES** this matter **with prejudice**.

IT IS SO ORDERED.

DATED this 28th day of April, 2008.


_____/s/ Anna J. Brown_____
ANNA J. BROWN
United States District Judge

14 - OPINION AND ORDER